IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KORA PACK PRIVATE LIMITED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00377-BP |
| | § | |
| MOTIVATING GRAPHICS LLC, | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are Defendant's Motion for Partial Summary Judgment with Brief and Appendix in Support filed by Motivating Graphics LLC ("MG") (ECF Nos. 35-37, respectively); Plaintiff's Response and Appendix in Support filed by Kora Pack Private Limited ("KP") (ECF Nos. 50, 51); MG's Reply to the Motion (ECF No. 53); KP's Response to MG's Reply (ECF No. 61); KP's Motion for Summary Judgment with Brief in Support (ECF Nos. 73, 74); KP's Supplemental Motion for Summary Judgment (ECF No. 78); MG's Response with Brief and Appendices in Support (EFC Nos. 82-86, respectively); KP's Reply to its Motion for Summary Judgement (ECF No. 87); MG's Amended Counterclaim against KP (ECF No. 34); KP's Motion to Dismiss Defendant's First Amended Counterclaim or For Judgment on the Pleadings (ECF No. 42); and  KP's Reply to the Motion to Dismiss (ECF No. 45). After considering the pleadings and applicable legal authorities, the Court **DENIES** MG's Motion for Partial Summary Judgment (ECF No. 35) and **GRANTS** KP's Motion for Summary Judgment (ECF No. 73). Additionally, the Court **GRANTS** KP's Motion to Dismiss Defendant's First Amended Counterclaim or For Judgment on the Pleadings (ECF No. 42).

# I.  BACKGROUND

## A.  Factual Background

This case concerns an international commercial arbitration. KP is an Indian company incorporated under the Indian Companies Act of 1956 and registered in Chennai, India, with its principal place of business there. ECF Nos. 11 at 1, 12; 36 at 2. MG is a Texas limited liability company, with its principal place of business and headquarters located in Tarrant County, Texas. *Id*. MG and KP agreed to use KP's facilities to manufacture Apple's "Rigid Phone Box" products. ECF Nos. 11 at 2, 36 at 2. On December 11, 2018, the parties executed a Memorandum of Understanding ("MOU") to dissolve any relationship between them. *Id*. The MOU included several dissolution provisions, including an arbitration clause instructing the parties on how to resolve any disputes that might arise. ECF Nos. 36 at 2, 50 at 2. The parties disagreed about payment under the MOU, KP invoked the arbitration clause, and it filed for arbitration. ECF Nos. 36 at 9, 50 at 2.

After several hearings, the arbitrators issued an opinion in which they interpreted the provisions of the MOU and evaluated the evidence presented to the panel. ECF No. 50 at 4. On July 19, 2021, the panel entered its Award directing MG to pay KP the principal sum of 22,82,69,169.70 Indian rupees, the equivalent of $2.9 million, plus interest ("the Award"). ECF No. 11 at 3, 46. MG has not paid the Award, and KP brings this suit for enforcement of the Award under 9 U.S.C. Chapter 2 (2023). *Id*. at 1, 3.

## B.  Procedural Background

KP seeks enforcement pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention" or "the NYC"). ECF No. 1. On June 17, 2022, KP filed its Amended Complaint. ECF No. 11. On July 26, 2022, MG filed an Answer and

2

asserted several affirmative defenses. ECF No. 24. On September 13, 2022, KP moved for judgment on the pleadings or to dismiss the affirmative defenses, and the Court ordered MG to file its response no later than October 18, 2022. ECF Nos. 27, 29. On October 7, 2022, MG moved to amend its answer and to deny KP's motion as moot because of the amended answer. ECF No. 33. On October 11, 2022, the Court granted MG leave to amend and deemed the motion to deny as a response to KP's Motion. ECF No. 38. The Court also authorized KP to file a Reply to the Motion by October 25, 2022. *Id*. On October 21, 2022, KP refiled its Motion to Dismiss Defendant's First Amended Counterclaim or for Judgment on the Pleading and later filed its Reply to the Motion. ECF Nos. 43, 45.

MG filed its Amended Counterclaim against KP and moved for partial summary judgment. ECF No. 35. In its Motion, MG argues that the Court should not enforce the Award because the composition of the arbitral tribunal was not in accordance with the MOU or Indian law. *See generally* ECF No. 36.

On April 25, 2023, KP moved for summary judgment, asking the Court to enforce the Award. ECF No. 73. MG responded to the Motion stating that summary judgment is not appropriate because it is entitled to assert "Article V defenses" under the NYC. ECF No. 83 at 9. Moreover, MG contends that total summary judgment is inappropriate because of its counterclaim. *Id.* Accordingly, as any analysis of MG's response to KP's Motion for Summary Judgment includes references to MG's Motion for Partial Summary Judgment and KP's Motion to Dismiss, the Court considers all three motions in this memorandum opinion.

## II.     LEGAL STANDARDS

### A.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc. Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

When a movant carries its initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion. *Anderson*, 477 U.S. at 249–50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

4

*Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.* "When parties file cross-motions for summary judgment, [the court reviews] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014).

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242–43. The Court grants a summary judgment motion only if the movant meets its burden and the nonmovant fails to make the requisite showing of a genuine issue of material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

## B.      The New York Convention

Under the NYC, a recipient of a foreign arbitral award may seek confirmation and enforcement of the award in federal court. *See* 9 U.S.C. §§ 202, 207. "The [NYC] provides a carefully structured framework for the review and enforcement of international arbitral awards." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004). The NYC contains two schemes for review of arbitral awards depending on whether a party brings a recognition or enforcement action in the country in which, or under the law of which, the award was made or in another country. *Gulf Petro Trading Co., Inc. v. Nigerian*

*Nat. Petroleum Corp.*, 512 F.3d 742, 746 (5th Cir. 2008). The NYC deems the first country to have "primary jurisdiction over the award" and the latter to have "secondary jurisdiction." *Id*. A court of primary jurisdiction is "free to set aside or modify an award in accordance with [the country's] domestic arbitral law and its full panoply of express and implied grounds for relief." *Id*. (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir.1997)).

For courts with secondary jurisdiction, "Article V [of the NYC] enumerates the [seven] exclusive grounds on which a court . . . may refuse recognition and enforcement of an award." *Id*. at 747; *First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 748 (5th Cir. 2012). "Defenses to enforcement under the NYC are construed narrowly, 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts.'" *Karaha Bodas*, 364 F.3d at 288 (citing *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 335 (5th Cir. 1976)).

Because the NYC provides only a few circumstances when a court may deny confirmation of an arbitral award, such proceedings generally are summary in nature. *Imperial Ethiopian*, 535 F.2d at 335-36. The showing required to avoid summary confirmation is high, and "the burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) (citing *Imperial Ethiopian*, 535 F.2d at 336).

## III.    ANALYSIS

### A.    The Court Denies MG's Motion for Partial Summary Judgment.

MG only raises an Article V(1)(d) defense to enforcement in its Motion, arguing that the arbitrator was not selected in compliance with the MOU or with India's Arbitration and Conciliation Act of 1996 ("ACA"). ECF No. 36 at 4-7.

The arbitration clause in the MOU reads as follows:

In the event of any dispute arising between the parties in respect of this [MOU], the same shall be referred to an arbitrator appointed each by the parties herein and such appointed Arbitrator, in consultation with other, shall appoint a Presiding Arbitrator to resolve the dispute in terms of the Arbitration and Conciliation Act, 1996. The venue of such arbitration shall be at Chennai and the language shall be in English and Court at Chennai shall have the exclusive jurisdiction.

ECF No. 51 at 13. After filing for arbitration, KP initially selected an arbitrator, but MG did not. ECF Nos. 36 at 3, 50 at 3. When MG failed to do so, KP asked the High Court of Madras to appoint an arbitrator for the proceeding on behalf of MG. *Id*. The Court notes that Chennai and Madras are two names for the same city. In 1996, the government of Tamil Nadu, India changed the city's name from Madras to Chennai. *Chennai*, Encyclopedia Britannica Online, http://www.britannica.com/place/Chennai (last visited July 27, 2023).

MG concedes that it did not appoint an arbitrator as provided in the MOU. *See generally* ECF No 36. However, it argues that the selection made for it was improper under Section 11 of the ACA and Indian law because only the Supreme Court of India, not an inferior High Court, may select arbitrators in international arbitrations such as this one. ECF No. 36 at 5. KP argues that allowing the High Court of Madras to select the arbitrators was proper under the terms of the MOU, which gave the Court of Chennai exclusive jurisdiction over the case. ECF No. 50 at 9.

Based on the explanation of Indian law provided to the Court, it appears that the appointment of the arbitrator for MG did not comply with the ACA. ECF No. 37 at 108-18. However, the Court also notes that MG did not object to the manner of appointment until almost twenty months after the High Court of Madras appointed an arbitrator on MG's behalf. ECF No. 36 at 3. Under these circumstances, after the complaining party strategically decides not to participate in the arbitration, its objection to the manner of appointment of the arbitration panel comes too late. *Karaha Bodas*, 364 F.3d at 298. As the Fifth Circuit noted in that case, despite

numerous opportunities, the losing party did not challenge the panel's composition until after the arbitrators were selected and, thus, "the procedural infirmities that [the Defendant] alleges do not provide grounds for denying enforcement of the award." *Id*.

So it was here. When KP and MG entered into the MOU, they outlined the procedures to select an arbitrator. ECF No. 51 at 13. KP timely picked an arbitrator and emailed MG regarding its choice. *Id*. at 73. MG did not appoint an arbitrator, and KP moved the High Court of Madras to appoint one on its behalf. *Id*. at 74. However, before that court would appoint an arbitrator, it set a hearing on the appointment issue and directed KP to notify MG of the hearing. *Id*. KP sent notice to MG via Air Mail and email, in accordance with the court's orders, stating that the court required MG's appearance at the hearing. *Id*. MG did not attend the hearing, and the court ordered KP to send notice of a second hearing to try and resolve the appointment issue. *Id*. at 75-76 MG did not appear at the second hearing. *Id*. at 76. Both notices to MG specifically stated KP's intention to have the High Court of Madras appoint an arbitrator and warned MG that if it did not participate in the appointment process, the court would proceed without it. ECF Nos. 50 at 2-3; 51 at 74-76. After MG did not appear at the second hearing, the court appointed an arbitrator on behalf of MG. ECF No. 51 at 76.

After the appointment and the arbitration proceeding began, MG still did not participate. It did not provide the arbitration panel with any information regarding the claim and did not appear at any hearing, despite KP's providing approximately seven notices of the arbitration hearings. *Id*. at 76-78 These notices included preliminary proceedings and a warning that the matter would be decided ex parte if MG's representatives did not appear in person or virtually. ECF Nos. 50 at 3, 51 at 77. MG served the notices on MG by Air Mail, Federal Express, email, and WhatsApp. ECF

No. 51 at 77. KP also published notices of the hearings in the *Fort Worth Star-Telegram*. *Id*. An Affidavit of Service shows KP's extensive efforts to notify MG of the proceedings. *Id*.

MG has offered no evidence to show that it did not receive the notices of the hearings regarding appointment of an arbitrator before the High Court of Madras or that the notices were procedurally improper. *See generally* ECF Nos. 35, 36, 53. Nor did MG offer any evidence that it did not receive any of the additional notices of the proceedings or explain why it did not appear before the arbitration panel at any point of the process. *Id*.

The Court concludes that MG's decision not to timely object to the arbitrator's selection and not to participate in the arbitration process was a "strategic decision that [MG] should not now be able to assert as a defense to enforcing the Award." *Karaha Bodas*, 364 F.3d at 298. Despite numerous opportunities to select its own arbitrator, to object to the High Court of Madras's selection of an arbitrator in its absence, and to participate in the arbitration, MG only raised the issue of the manner of the panel's appointment after KP filed this action. ECF No. 24. Like the district court and the Fifth Circuit in *Karaha Bodas*, the Court finds MG's Article V(1)(d) defense on this point unavailing and denies MG's Motion for Partial Summary Judgment (ECF No. 35).

**B.      The Court grants KP's Motion for Summary Judgment.**

**1.      MG's Article V defenses are invalid.**

The Court has secondary jurisdiction under the NYC since the Award was issued in India under Indian law. *Gulf Petro*, 512 F.3d at 746. Consequently, the Court may refuse to enforce the Award only if one of the seven Article V exceptions applies. *Id*. In its Response to KP's Motion for Summary Judgment, MG raises four of those defenses. ECF No. 83 at 14-24. First, it asserts under Section 1(d) "that the composition of the arbitral tribunal or procedure was not in accordance with the agreement of the parties or was not in accordance with the law of the country where the

arbitration took place." *Id*. at 14. Second, it claims under Section 1(a) that the MOU is invalid for procedural and substantive reasons. *Id*. at 18. Third, it argues under Section 1(c) that the Award it is beyond the scope of the MOU. *Id*. at 21. Finally, it claims under Section 2(b) that enforcement of the Award would be contrary to Indian public policy. *Id*. at 24.

> **a.    MG objection to the composition of the arbitration panel comes too late.**

For the reasons stated in the previous section, MG's defense under Article V(1)(d), made in Response to KP's Motion, fails because MG raised it too late. *Karaha Bodas*, 364 F.3d at 298.

> **b.    MG has not shown that the arbitration agreement is invalid as a matter of law.**

MG next raises an objection under Article V(1)(a), which permits courts to refuse to enforce an arbitral award if the underlying arbitration agreement "is not valid under the law to which the parties have subjected it." NYC art. V(1)(a). MG argues that the agreement is invalid both procedurally and due to KP's fraudulent actions. ECF No. 83 at 18-21. Specifically, MG argues that KP: (1) failed to accept MG' proposal in the prescribed manner as required by section 7(2) of the India Contract Act ("ICA"); (2) fraudulently induced MG into signing the MOU in violation of sections 13, 14, 17, and 19 of the ICA; (3) made misrepresentations to MG in violation of ICA sections 13, 14, 18, and 19; (4) unlawfully detained or threatened to detain MG's equipment in violation of ICA sections 13, 14, and 15; (5) failed to fulfill a condition precedent in violation of ICA sections 5 and 6(3); and (6) failed to perform its reciprocal promise in violation of ICA sections 51, 52, and 54. *Id*.

As previously noted, MG had ample opportunity to participate in the arbitration and challenge the validity of the MOU before the arbitration panel. However, MG chose not to appear and dispute or deny the execution of the MOU despite repeated efforts by KP and the arbitrators to engage MG. *See* ECF Nos. 84 at 159-84, 87-1. Moreover, MG has offered no evidence showing

that it attempted to avoid the MOU on the grounds of fraud or coercion at any point since its execution. *See* ECF No. 83. Accordingly, for the reasons previously stated, the Court finds that this affirmative defense against enforcement is not properly raised at this time as MG made a "business decision" not to participate in the arbitration. *See Karaha Bodas*, 364 F.3d at 298; *see also La Societe Nationale Pour la Recherche*, *la Production*, *le Transport*, *la Transformation et la Commercialisation des Hydrocarbures v. Shaheen Natural Resources Co*., 585 F. Supp. 57, 62 (S.D.N.Y.1983) (holding that respondent waived objection to confirmation of the award on the ground that it was not bound by the arbitration provision because it did not raise the objection before the arbitration panel).

However, even assuming the defense was timely, the Court still rejects this argument because MG has not provided evidence that the MOU's arbitration clause is unenforceable. MG must bring an Article V(1)(a) challenge against the arbitration provision, not against the contract as a whole. *Reddy v. Buttar*, No. 3-18-cv-00172-FDW-DSC, 2020 WL 2134191, at *5 (W.D.N.C. May 5, 2020), *aff'd*, 38 F.4th 393 (4th Cir. 2022); *BCB Holdings Ltd*. *v. Gov't of Belize*, 110 F. Supp. 3d 233, 248 (D.D.C. 2015), *aff'd*, 650 F. App'x 17 (D.C. Cir. 2016); *Nanosolutions*, *LLC v. Prajza*, 793 F. Supp. 2d 46, 54-55 (D.D.C. 2011) (holding that under the FAA, a district court may consider "challenges specifically the validity of the agreement to arbitrate," but not challenges to the contract as a whole). *See also* Restatement of the Law: The U.S. Law of Int'l Com. And Investor-State Arb. § 4–10 cmt. e. (Am. L. Inst. 2019) (Under Article V(1)(a), "courts do not review the arbitral tribunal's rulings on challenges to the validity of the contract as a whole, such as a claim that a contract including an arbitration clause was fraudulently induced or is illegal."); § 4-10 illustration 2 (even if seller argues that a contract is invalid because the buyer fraudulently induced it to enter into it by misrepresenting material facts concerning the transaction, a court

cannot review the validity of the contract during an enforcement proceeding if an arbital tribunal already entered an award in favor of the buyer, finding that the agreement was genuine). However, MG improperly attacked the validity of the entire MOU, not the specific arbitration clause at issue. ECF No. 83 at 18-21. Accordingly, this defense is not proper.

Moreover, to invoke an Article V(1)(a) defense, the party opposing enforcement must furnish the court with proof of specific grounds for denying the petition. *Henry v. Murphy*, No. M-82, 2002 WL 24307, at *3 (S.D.N.Y. Jan. 8, 2002), *aff'd*, 50 F. App'x 55 (2d Cir. 2002). To prove that KP fraudulently induced and coerced MG into signing the MOU, MG relies on the declaration of Brandon Parish ("Parish"), MG's Vice President of Sales and Business Development. ECF No. 84. Parish states that KP made several false promises to MG to return its equipment, but did so with no intent of performing. *Id.* at 22, 34. MG's only additional evidence on this point is that KP never returned the equipment in dispute. *Id.*

However, the evidence of breach of an agreement is insufficient evidence of an intent to deceive or agreement to a contract with no present intention of performing it. And MG has not produced any evidence suggesting anything to the contrary in Indian law. *See Rosales v. Lynch*, 821 F.3d 625, 629 (5th Cir. 2016) (holding that "to the extent the substance of foreign law is at issue, the petitioner has the 'burden of proving' it"); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2981 (3d ed. 2023) ("[n]othing in [R]ule [44.1] requires the district court to engage in private research . . . [or] . . . to undertake that burden.")

Thus, because the only proof on this issue is a conclusory statement of an interested witness, the Parrish declaration is not enough to defeat summary judgment. *Lester v. Wells Fargo Bank*, N.A., 805 F. App'x 288, 291 (5th Cir. 2020); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the

defendants' theory is a conclusory, self-serving statement by the defendant"). So, even if the Court considered MG's challenge to the MOU, MG has not offered sufficient evidence that KP fraudulently induced or tricked MG into entering the MOU.

MG's argument that the MOU is invalid because KP failed to accept the proposal in the prescribed manner as ICA Section 7(2) requires also fails as a matter of law. ECF No. 83 at 18. MG is correct that KP's representative did not execute the MOU before witnesses Denis Cruze and Francis Malapati as required by the agreement. *Id*. However, ICA Section 7(2) also states that if acceptance is not made in the manner agreed to, the "proposer may, within a reasonable time after the acceptance is communicated to him, insist that his proposal shall be accepted in the prescribed manner, and not otherwise." § 7(2), ICA. "[I]f the proposer fails to communicate the objection, he accepts the acceptance." *Id*. MG has not offered any evidence that it notified KP that its acceptance was improper. ECF No. 83 at 18. Accordingly, MG has not raised a genuine issue of fact on the issue of ICA Section 7(2).

Next, MG argues that the MOU is invalid because KP failed to fulfill a condition precedent to the acceptance of MG's proposal in the MOU. *Id*. at 20. As part of the dissolution of their joint venture, the parties agreed in the MOU that KP would return MG's equipment that was housed at its facility, and MG would pay KP 36 million rupees. ECF Nos. 73 at 20, 84 at 31. KP never sent back the equipment, but MG nonetheless paid KP the 36 million rupees in an "effort to encourage Kora Pack's performance." ECF No. 84 at 19. Neither party states why the equipment was not sent back prior to the arbitration. However, MG asserts that there was no contract from the beginning since KP did not return the equipment, and the MOU is invalid. *Id*.

Once again, the Court notes that MG never sought recourse to get the equipment back from KP outside a demand to KP, and it did not pursue this claim in the arbitration. Moreover, this

argument is incompatible with MG's previous assertions. MG cites to Parish's deposition to show that KP never delivered the equipment in question, but the same deposition confirms that MG entered into and executed the MOU on December 11, 2018. ECF No. 84 at 30. KP emailed back its acceptance on December 25, 2018. *Id.* Moreover, MG paid KP 36 million rupees in partial satisfaction of the contract. ECF No. 83 at 19. Finally, MG's claim that KP failed to perform a reciprocal promise after it paid KP the 36 million rupees rests on the assumption that there was a contract that KP breached. *Id.* at 21. Accordingly, MG has failed to furnish the court with proof of specific grounds for denying the petition on the ground that no contract ever existed between the parties.

### c.   MG has not shown that the Award exceeded the scope of the arbitration agreement.

MG also seeks relief under Article V(1)(c), which provides that an award may be disregarded if it "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration. . . ." NYC, Art. V(1)(c); ECF No. 83 at 22. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). "In other words, if the parties did not agree in the contracts to submit certain disputes to arbitration, then arbitral awards purporting to resolve those disputes should not be confirmed." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1168 (11th Cir. 2004).

Courts should construe Article V(1)(c) "narrowly to advance the 'enforcement-facilitating thrust of the [NYC].'" *Am. Const. Mach. & Equip. Corp. v. Mechanised Const. of Pakistan Ltd.*, 659 F. Supp. 426, 429 (S.D.N.Y.1987) (quoting *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir.1974)). A party

14

challenging the enforcement of an arbitral award based upon the "beyond the scope" defense "'must . . . overcome a powerful presumption that the arbitral body acted within its powers.'" *Chevron Corp*. *v*. *Republic of Ecuador*, 949 F. Supp. 2d 57, 67 (D.D.C. 2013) (quoting *Parsons*, 508 F.2d at 976); *Calbex Min*. *Ltd*. *v*. *ACC Res*. *Co*., *L.P*., 90 F. Supp. 3d 442, 461 (W.D. Pa. 2015). "[S]uch limited review is consistent with 'the basic purposes of arbitration: to resolve disputes speedily and to avoid the expense and delay of extended court proceedings.'" *Chevron Corp*., 949 F. Supp. 2d at 67 (quoting *Fed*. *Commerce & Navigation Co*. *v*. *Kanematsu–Gosho*, *Ltd*., 457 F.2d 387, 389 (2d Cir.1972)).

MG argues that the Award exceeded the scope of the MOU in five ways. ECF No. 83 at 23-24. First, the Award did not require KP to provide to MG bills of lading showing that it had shipped two machines to Texas as the MOU required. *Id*. at 13. Second, the outstanding rent owed by MG was subject to the execution of a rental agreement, which the parties never executed. *Id*. Third, MG did not agree in the MOU to arbitrate the issue of rent owed by a person in use and occupation of the premises. *Id*. at 14. Fourth, the parties did not agree in the MOU that KP could continue using MG's machines and equipment after MG was forced to leave the premises. *Id*. And finally, the MOU did not obligate MG to pay for overhead expenses including taxes, electricity, salaries, and export sales that KP incurred from using MG's equipment without its permission. *Id*.

The Court declines to sustain MG's objections that the Award exceeded the scope of arbitration in the MOU. Initially, the Court notes that while KP's claims were being arbitrated, MG did not raise any objections regarding the scope of the relief KP was seeking. The Award was based on claims that were included in KP's "Statement of Claim," which was served upon MG. ECF Nos. 84 at 168, 87-1 at 25. Accordingly, MG was aware of the claims and request for damages that KP was bringing before the arbitration tribunal and had every opportunity to participate in the

15

arbitration and raise an objection that the claims were beyond the subject matter of the agreement. *See Karaha Bodas*, 364 F.3d at 298. MG did not do so.

Moreover, the arbitration panel considered and discussed many of these allegations in determining how much to award KP. First, the panel explained why it awarded KP rent regardless of whether there was an executed contract. ECF Nos. 84 at 176-77, 87-1 at 20-21. Additionally, the panel never discussed the issue of "rent owed by a person in use and occupation of the premises" in the context of determining total damages. ECF Nos. 84 at 176, 87-1 at 20. The panel merely stated that all a formal rental agreement would achieve, compared to the unexecuted agreement, would be to officially designate MG as the "tenant" or "person in use and occupation of" the facility premises. *Id*. Next, the panel granted KP's request for costs relating to the use of the equipment and any overhead costs related to manufacturing the boxes from April 2018 to March 2019. The panel held that a reading of clauses two and six of the MOU suggests that KP would manufacture the Rigid Phone Box until August 2019. ECF Nos. 84 at 178, 87-1 at 22. Accordingly, it follows that any expenses relating to manufacturing the boxes prior to August 2019 would fall under the subject matter of the MOU.

Finally, the Court addresses MG's claim that the Award was beyond the scope of the MOU because it did not require KP to provide to MG bills of lading showing that it had shipped the two machines to Texas as required by the MOU. *Id*. at 13. The MOU requires arbitration for a variety of issues regarding the dissolution of the partnership, including the return of MG's equipment. ECF Nos. 84 at 164, 87-1 at 21. The panel was to determine, based on all of the evidence, an appropriate remedy for the disagreement. The panel here viewed all of the evidence presented and determined an appropriate outcome based on that evidence and the arguments presented. ECF Nos. 84 at 159-184, 87-1. While the Award does not mention the unreturned equipment, the Court notes

that KP's claims brought before the tribunal related only to unpaid costs and rent, and that MG did not engage in the arbitration process to assert its claim to the equipment. *Id.*

Thus, MG has not overcome the powerful presumption that the arbitral body acted within its power, and this defense is invalid as a matter of law. *Chevron Corp.*, 949 F. Supp. 2d at 67. To the extent that MG attacks the arbitration panel's alleged errors regarding findings of fact, the Court is not empowered to correct errors of fact or law made by the panel. *Pfeifle v. Chemoil Corp.*, 73 F. App'x 720, 722 (5th Cir. 2003) ("an arbitrator's erroneous interpretation of law or facts is not a basis for vacatur of an award"); *Nauru Phosphate Royalties, Inc. v. Drago Daic Ints., Inc.*, 138 F.3d 160, 164-65 (5th Cir. 1998) (holding that a court "may not reconsider an award based on alleged errors of fact or law or misinterpretation of the contract"); *USC Ukrnafta v. Carpatsky Petroleum Corp.*, Civ. A. No. H-09-891, 2017 WL 4351758, at *16 (S.D. Tex. 2017).

### d.   MG has not shown that the Award is contrary to the public policy of the United States.

Under Article V(2)(b), the Court may refuse to recognize or enforce an arbitral award if it "would be contrary to the public policy of that country." *Karaha Bodas*, 364 F.3d at 305-06; NYC art. V(2)(b). The public policy defense is to be "construed narrowly" and "applied only where enforcement would violate the forum state's most basic notions of morality and justice." *Id.* (quoting *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 851 n. 2 (6th Cir.1996)); *see also Parsons*, 508 F.2d at 974. "The general pro-enforcement bias informing the [NYC] . . . points to a narrow reading of the public policy defense." *Karaha Bodas*, 364 F.3d at 306 (quoting *Parsons*, 508 F.2d at 973). Erroneous legal reasoning or misapplication of law is generally not a violation of public policy within the meaning of the NYC. *Id.* (citing *Coutinho Caro & Co. U.S.A., Inc. v. Marcus Trading, Inc.*, 3:96-cv-2218-AWT, 2000 WL 435566, at *12 (D. Conn. Mar. 14, 2000)). Thus, "[a]lthough this defense is frequently raised, it 'has rarely been successful.'"

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys.*, *Inc.*, 665 F.3d 1091, 1097 (9th Cir. 2011).

Under the Award, KP must return MG's equipment after it is paid by MG. ECF No. 87-1 at 25. MG states that enforcement of the Award would be contrary to the public policy of India under Section 151 of the ICA, which requires all bailees to exercise prudence in taking care of the goods in their possession. ICA § 151. On December 1, 2022, an inspector traveling to KP's facility found that that some of MG's equipment had been sold, and the remaining equipment was damaged or in poor condition. ECF No. 84 at 189-90. Thus, MG argues that KP did not care for the equipment and machinery in its possession as a person of ordinary prudence would under similar circumstance, and enforcement of the Award would thus violate Indian public policy. ECF No. 83 at 24. Moreover, MG argues that because some of the machines were sold or deteriorated, KP cannot comply with the Award's requirement to return MG's equipment, and MG should not have to comply with the Award either. *Id.* at 26.

MG's argument is unpersuasive because a party challenging an award on public policy grounds must show that enforcing the award is "contrary to the public policy of the *enforcing country*," not the country where the award was entered. *Ukrnafta*, 2017 4351758 at *18 (emphasis in original) (citing *Karaha Bodas* 364 F.3d at 305-06). MG has offered no evidence to show that enforcement of the Award would offend this country's "most basic notions of morality and justice" as the Fifth Circuit requires for invalidating an award on public policy grounds.

Moreover, a party complaining about an arbitration award, such as MG here, cannot avoid enforcement due to circumstances that were of its own making. *See Agility Pub. Warehousing Co. K.S.C., Pro. Cont. Administrators v. Supreme Foodservice GmbH*, 495 F. App'x 149, 152 (2d Cir. 2012) (the court need not decide "whether any basic, fundamental United States public policy

mandates dismissal of claims . . . because [ ] the situation that [Defendant] complains of was largely, if not entirely, 'of [Defendant's] own making.'"). Here, the Award stated that "[KP] is duty bound to send back that equipment lying in the premises which are belonging to [MG] after realizing the amount awarded in this award, and by collecting necessary charges towards such shipment as on the date of such export." ECF No. 87-1 at 25. Accordingly, KP was not obligated to return MG's equipment until MG paid the Award, which it never has. Nor did the Award require KP to maintain the equipment indefinitely without any possible avenue of reimbursement or knowledge of when if ever MG would satisfy the Award. Thus, the reason that the machines deteriorated or why KP sold some of them was due to MG's refusal to pay the Award for an extended period of time. Consequently, the Court does not find that enforcement of the Award would violate the public policy of the United States under Article V(2)(b).

### 2.    MG's counterclaim is not proper as a matter of law.

The Court also evaluates the validity of MG's counterclaim in deciding whether to grant summary judgment. First, MG alleges that KP engaged in fraud, fraudulent inducement, and misrepresentation in violation of ICA §§ 13, 14, 17, 18 and 19 and Texas common law by "making material misrepresentations to MG consisting of a promise of future performance made with the intent, at the time the promise was made, not to perform said promise." ECF No. 83 at 36. Second, MG alleges that KP used its equipment after the joint venture between the parties did not proceed and MG terminated its business relationship with KP. *Id*. at 37. Finally, MG asserts that KP breached its duty to MG by (1) not properly protecting and maintaining the equipment, and by (2) selling and transferring the equipment to third parties. *Id*.

Actions to confirm international arbitration awards are not civil actions, but rather summary proceedings in the nature of federal motion practice. *See Imperial Ethiopian*, 535 F.2d

at 335 & n.2; 9 U.S.C. § 6. If a filing seeks review of an arbitration award, courts will recharacterize it as a motion no matter how the parties structure or style the filing. *See Productos Mercantiles E Industriales*, *S.A. v. Faberge USA*, *Inc.*, 23 F.3d 41, 46 (2d Cir. 1994); *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1257-59 (7th Cir. 1992); *O.R. Secs.*, *Inc. v. Prof'l Planning Assocs.*, 857 F.2d 742, 745-46 (11th Cir. 1988). "This is true even if a party captions its filing like a pleading or structures the filing's contents like a pleading." *See IFC Interconsult*, *AG v. Safeguard Int'l Partners*, *LLC*, 438 F.3d 298, 308 (3d Cir. 2006).

While this case has progressed like a normal civil action, parties to a confirmation proceeding usually may not counterclaim under Rule 13 because the Federal Arbitration Act does not contemplate litigation of any matters beyond those the Act explicitly permits. *See Booth v. Hume Publ'g*, *Inc.*, 902 F.2d 925, 931 (11th Cir. 1990); *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987) (holding that the party seeking confirmation of an arbitration award may not join a related claim for damages). *But see BP Am. Prod. Co. v. Chesapeake Expl.*, *LLC*, 747 F.3d 1253, 1259-60 (10th Cir. 2014) (allowing a defendant's counterclaim where the plaintiff's initial petition sought additional relief apart from the confirmation of an arbitration award).

Accordingly, courts are hesitant to allow counterclaims in confirmation proceedings under the NYC. *Arb. between Exceed Int'l Ltd.* v. *DSL Corp.*, No. CIV.A. H-13-2572, 2014 WL 1761264, at *9 (S.D. Tex. Apr. 30, 2014) (citing *Ottley*, 819 F.2d 373, 377 (2d Cir.1987)); *Marker Volkl (Int'l) GmbH v. Epic Sports Int'l*, *Inc.*, 965 F. Supp. 2d 308, 310–11 (S.D.N.Y. 2013); *Evergreen Sys.*, *Inc. v. Geotech Lizenz AG*, 697 F. Supp. 1254, 1257 (E.D.N.Y. 1988); *Fertilizer Corp. of India v. IDI Mgmt.*, *Inc.*, 517 F. Supp. 948, 963 (S.D. Ohio 1981). The text of the NYC does not contain any provision that permits counterclaims. *Evergreen Sys.*, 697 F. Supp. at 1257. Instead, the NYC envisions a summary disposition of the issues where the court denies relief only if the

party resisting enforcement shows that one of the specific grounds stated in the NYC for non-enforcement exists. *Id*. (citing *Parsons*, 508 F.2d at 973); 9 U.S.C. § 207. By limiting the scope of the enforcement proceeding, the NYC assures the speedy enforcement of awards and encourages the use of the arbitral process. *Id*. (citing *Bergesen v. Joseph Muller Corp*., 710 F.2d 928, 932 (2d Cir.1983)). Accordingly, MG's counterclaim should be dismissed without prejudice.

However, MG argues to the contrary and cites two cases from courts outside of the Fifth Circuit in support. ECF No. 83 at 26-27. First, in *Pike v. Freeman*, the Second Circuit reversed a district court's decision that a counterclaim for indemnification, which was unrelated to the previously arbitrated breach of contract claims, was subject to arbitration because it was a "collateral attack" on the award. 266 F.3d 78, 89-90 (2d Cir. 2001). The Second Circuit's decision did not specifically address whether counterclaims are permitted in a confirmation proceeding, but whether they first must be brought in the underlying arbitration. *Id*.

Regardless, the decision in *Pike* does not support MG's argument because of different facts. The parties there entered two separate agreements, only one of which was subject to arbitration. *Id*. In the court proceeding to enforce the award under the NYC, the losing party sought to counterclaim for breach of the separate agreement. *Id*. However, the district court found the counterclaim was within the scope of the arbitral agreement and thus subject to arbitration. *Id*. at 89. The district court held that because the defendant could have asserted his counterclaim in the arbitration but failed to do so, he had waived his right to assert those claims. *Id*.

The Second Circuit agreed with the district court's reasoning that a claim raised in federal court that is predicated on an agreement with an arbitration clause must first be heard in front of an arbitration panel. *Id*. However, because the counterclaim arose from the separate agreement, the Second Circuit concluded that the district court erred in dismissing it as a matter of law. *Id.*

Additionally, the court held that the defendant had not waived his counterclaim by not bringing it up in the arbitration. *Id*. at 91-92. Nor did res judicata bar the counterclaim since it did not involve the same "transaction" as the claims asserted in the arbitration. *Id*. and 91-92. Accordingly, the court remanded the counterclaim, stating that the district court needed to first determine whether it was subject to arbitration though the separate agreement lacked an arbitration clause. *Id*.

Here, MG's claims of fraud and misuse arose prior to the arbitration. *See* ECF No. 83. Its claim of negligent bailment also began before the arbitral proceeding and continues to this day. *Id*. These claims were related to the MOU and were subject to the arbitration agreement. Moreover, the issues MG raised in its counterclaim are part of the same "transaction" initially referred to the arbitration panel and cannot be advanced here.  Res judicata operates to bar claims where a party had a full and fair opportunity to litigate and applies to international arbitrations. *Schlumberger Tech. Corp. v. United States*, 195 F.3d 216, 220 (5th Cir. 1999); *Consorcio Rive, S.A. de C.V. v. Briggs of Cancun, Inc.*, No. CIV.A. 99-2204, 2000 WL 1023420, at *4 (E.D. La. July 24, 2000). The Award with the arbitration panel's accompanying written memorandum is a final decision on the merits. *See generally* ECF Nos 84 at 159-84, 87-1. MG was a party to that proceeding. *Id*. MG's counterclaim for fraud and misappropriation arises from facts that occurred prior to entry of the Award, and MG had the opportunity to litigate these claims in the arbitration proceedings. The claims relate to the same contractual agreement previously presented to the arbitration panel and concern the same equipment. Thus, the counterclaim seeks to collaterally attack the Award. Accordingly, given the scope of the MOU and the prior arbitration proceeding, allowing MG's counterclaim to proceed would be improper even under *Pike*.

In the second case that MG cites, *Jugometal v. Samicorp, Inc.*, the district court held that the "[NYC] does not prevent this Court from entertaining set-offs or counterclaims in a proper

case where authorized by Rule 13." 78 F.R.D. 504, 507 (S.D.N.Y. 1978). The Court found that this was especially true when the counterclaim would not "defer the trial of the main case [ ] or frustrate the fair and speedy administration of justice as required by the [NYC]." *Id*. This case is distinguishable from the instant case because the counterclaim sought recovery for relief already ordered in the same arbitral award at issue in the confirmation proceeding. *Id*. at 505. The counterclaim did not relate to a new issue to be litigated, but rather a part of the existing award that was before the court for enforcement. *Id*.

In view of the summary nature of the NYC's enforcement proceedings, the Court concludes that MG cannot bring its counterclaim in a confirmation proceeding under the NYC. *DSL Corp*., 2014 WL 1761264 at *9. "The full scope of the parties' business disputes may not be adjudicated in the context of such a proceeding" and "[t]o allow the assertion of such claims would result in the conversion of the proceeding into a plenary trial." *Evergreen Sys*., 697 F. Supp. at 1257. This conversion would frustrate the NYC's purpose and the nature of the enforcement proceeding. *Id*. Consequently, MG's claim for negligent bailment arising after entry of the Award exceeds the scope of the issues to be determined in this case, and the Court may not decide a counterclaim unrelated to the enforcement of the present Award. *DSL Corp*., 2014 WL 1761264 at *9. MG's claims for events occurring before the arbitration are also barred due to the nature of the proceedings, but regardless, cannot be raised as they are merely collateral attacks on the Award. Thus, MG cannot raise its counterclaim in this enforcement proceeding, and the Court should dismiss them without prejudice. *Id*.; *Ottley v. Schwartzberg*, 819 F.2d at 377; *Evergreen Sys*., 697 F. Supp. at 1257.

**C.      The Court grants KP's Motion to Dismiss Defendant's First Amended Counterclaim or For Judgment on the Pleadings.**

For the reasons just stated, the Court determines that MG's counterclaim for negligent bailment, fraud, and misappropriation does not state a claim upon which relief can be granted in this confirmation proceeding, and the Court dismisses it without prejudice.

## IV.      CONCLUSION

MG has not raised a viable Article V defense to enforcement of the Award. Moreover, its counterclaim does not state a ground upon which the Court can grant relief. Accordingly, the Court **DENIES** the Motion for Partial Summary Judgment filed by Motivating Graphics LLC (ECF No. 35), **GRANTS** the Motion for Summary Judgment filed by Kora Pack Private Limited (ECF No. 73), and **GRANTS** Kora Pack Private Limited's Motion to Dismiss Defendant's First Amended Counterclaim or For Judgment on the Pleadings (ECF No. 42) and **DISMISSES without prejudice** Motivating Graphics LLC's First Amended Counterclaim (ECF No. 34).

It is so **ORDERED** on July 27, 2023.


_____

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE